UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BRANDON DAVID WRIGHT,

Plaintiff,

v.

JAY INSLEE, *et al.*,

Defendants.

Case No. C23-854-JHC-SKV

REPORT AND RECOMMENDATION

## I. INTRODUCTION

Plaintiff Brandon Wright is in the custody of the Washington Department of Corrections ("DOC") and is currently confined at the Monroe Correctional Complex ("MCC"), Special Offender Unit ("SOU") in Monroe, Washington. Plaintiff alleges in this action violations of the Americans with Disabilities Act ("ADA") and the Rehabilitation Act ("RA") arising out of his confinement in the DOC's Residential Treatment Units ("RTUs"), units which house offenders who have been diagnosed with a mental illness.[1] *See* Dkt. 5 at 5-6. Defendants now move for

[1] Plaintiff filed his complaint on the Court's standard prisoner civil rights form. *See id.* However, Plaintiff does not allege in his pleading any civil rights cause of action. Rather, Plaintiff identifies a single count in his complaint in which he alleges violations of the ADA and the RA. *See* Dkt. 5 at 5.

summary judgment. *See* Dkt. 18. Plaintiff has filed a response opposing Defendants' motion, and Defendants have filed a reply in support of their motion. *See* Dkts. 24, 25.

The Court, having reviewed Plaintiff's complaint, Defendants' motion for summary judgment, the briefing of the parties, and the balance of the record, concludes that Defendants' motion should be granted, and that Plaintiff's complaint and this action should be dismissed without prejudice.

## II. BACKGROUND

Plaintiff submitted his complaint to the Court for filing on June 6, 2023. *See* Dkt. 1. At that time, Plaintiff was housed in an Intensive Treatment Unit at the SOU. *See* Dkt. 21, ¶ 10. Inmates housed in the Intensive Treatment Units are considered maximum custody inmates because they pose a significant risk to the safety and security of others. *Id.*, ¶ 5. Plaintiff indicates in his response to Defendants' summary judgment motion that he has now "completed max-custody and has been referred back out to close-custody." Dkt. 24 at 17-18. Though Plaintiff filed this action while confined in the SOU, his complaint appears to relate to both his confinement in the Washington State Penitentiary ("WSP") RTU, *i.e.*, the BAR Units[2], and to his confinement in the MCC RTU, *i.e.*, the SOU. *See* Dkt. 5 at 5-7. Plaintiff's response to Defendants' summary judgment motion confirms this interpretation of his complaint. *See* Dkt. 24 at 10-12.

Plaintiff asserts in the single count of his complaint that inmates such as himself who have been diagnosed with a mental illness and are housed in DOC RTUs are discriminated

[2] BAR Units is a reference to the Baker, Adams, Rainer housing units located at WSP. *See* https://www.doc.wa.gov/corrections/incarceration/prisons/wsp.htm

against because they are not afforded equal access to education.[3] *Id*. at 5-6. Plaintiff also asserts that the SOU has only a "volunteer" library and that the library has been closed since his arrival at the SOU. *Id*. at 6. Plaintiff claims that inmates housed outside the RTUs have access to a library and to post-secondary education while inmates housed in the RTUs are denied such services. *Id*. Plaintiff maintains that this inequality places him, and others like him, at an unfair disadvantage when it comes to reintegrating successfully back into society. *Id*.

Plaintiff identifies the following Defendants in his complaint: Jay Inslee, Governor of the State of Washington; Cheryl Strange, Secretary of the DOC; Jack Warner, Superintendent of MCC-SOU; and Donald Holbrook, former Superintendent of WSP. Dkt. 5 at 1, 3-4. Plaintiff indicates that he is suing these individuals in their official capacities. Dkt. 24 at 14-15. Plaintiff seeks declaratory and injunctive relief, and an award of costs. *Id*. at 7-8.

## III. DISCUSSION

Defendants present multiple arguments in their summary judgment motion, including that Plaintiff failed to exhaust his administrative remedies, that he has not shown a violation of the ADA or RA, and that his claim for injunctive relief is baseless because he has not established that he suffered a violation under the ADA. *See* Dkt. 18. The Court concurs that Plaintiff failed to exhaust the relevant administrative remedies and, thus, the Court need not address Defendants' remaining arguments.

---

[3] Plaintiff indicates in his complaint that he is proceeding on behalf of himself, and other inmates housed in the RTUs. *See* Dkt. 5 at 5-7. The Ninth Circuit has made clear that a *pro se* litigant has no authority to appear as an attorney for others. *See C.E. Pope Equity Trust v. United States*, 818 F.2d 696, 697 (9th Cir. 1987) (citing *Russell v. United States*, 308 F.2d 78, 79 (9th Cir. 1962)); *McShane v. United States,* 366 F.2d 286, 288 (9th Cir. 1966). Because Plaintiff is proceeding *pro se* in this action he does not have authority to appear on behalf of any other litigants. Thus, Plaintiff may assert claims only on behalf of himself.

**A. Applicable Legal Standard**

Section 1997e(a) of Title 42 of the United States Code provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The Ninth Circuit has made clear that § 1997e(a) "require[s] prisoners bringing ADA and Rehabilitation Act claims to exhaust those claims through available administrative remedies before filing suit." *O'Gunn v. Lovelock Corr. Ctr.*, 502 F.3d 1056, 1061-622 (9th Cir. 2007). Section 1997e(a) requires *complete* exhaustion through any available process. *See Porter v. Nussle* 534 U.S. 516, 524 (2002); *Booth v. Churner*, 532 U.S. 731, 739 (2001). Section 1997e(a) also requires *proper* exhaustion. *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). "Proper" exhaustion means full compliance by a prisoner with all procedural requirements of an institution's grievance process. *See id*. at 93-95.

Failure to exhaust administrative remedies is an affirmative defense which a defendant must plead and prove. *Albino v. Baca*, 747 F.3d 1162, 1168 (9th Cir. 2014) (citing *Jones v. Bock*, 549 U.S. 199, 216 (2007)). A defendant must produce evidence demonstrating that there was an available administrative remedy and that the prisoner did not exhaust that remedy. *Id*. at 1172. The burden then shifts to the prisoner who must show that there is something in his case that made the existing remedies effectively unavailable to him. *Id*. If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment. *Id*. at 1166.

//

//

//

**B. Available Administrative Remedies**

Defendants identify two administrative processes available to inmates seeking the type of remedy Plaintiff seeks here: (1) the DOC's ADA accommodation request process; and (2) the DOC's resolution request process. *See* Dkt. 18 at 4-6.

Inmates who believe they require an accommodation under the ADA, may seek an accommodation by "making their needs known to medical or classification employees/contract staff and/or the designated ADA Coordinator." *See* Dkt. 19-1 at 5. Once an accommodation request is made, the ADA Coordinator gathers the necessary information, including custody, security, and medical information, and submits an Accommodation Status Report to the Accommodation Review Committee ("ARC") for review. Dkt. 19, ¶ 7. The ARC, which meets monthly to consider inmate accommodation requests, will discuss an inmate's request and then decide as a group whether to approve or deny the request. *See id*. If the ARC denies an inmate's request for an accommodation, the individual may appeal the decision to an appeals committee. *Id*., ¶ 11. If an inmate believes they were discriminated against by DOC personnel because of their disability, they may seek a resolution through the DOC's Offender Grievance/Resolution Program. *See id*.

The Offender Grievance/Resolution Program is a program through which offenders may file complaints relating to various aspects of their incarceration. *See* Dkt. 22, ¶ 4; Dkt. 22-1 at 7-8. Among the issues an offender may challenge through the program are: (1) DOC policies, rules, and procedures; (2) the application or lack of application of policies, rules, and procedures; (3) the actions of staff or volunteers; (4) the actions of other offenders; (5) personal safety; and (6) physical plant conditions. *See id*.

The initial level, Level 0, is the informal resolution stage. Dkt. 22, ¶ 6; Dkt. 22-1 at 15. At this level, the Resolution Specialist at the facility where the offender is housed receives a written complaint from an offender which identifies an issue with respect to which the offender wishes to pursue a resolution. *Id*. The Resolution Specialist either pursues informal resolution, returns the complaint to the offender for rewriting or for additional information, rejects the complaint if the issue is not eligible for resolution through the Offender Resolution Program, or accepts the complaint and processes it as a concern that warrants Level I review. *See id*.

At the first step of the formal resolution process, Level I, the Resolution Specialist assigns the complaint to an appropriate employee or contract staff member for review. *See* Dkt. 22, ¶ 6; Dkt. 22-1 at 15-16. Once the review is complete, the Resolution Specialist issues a formal response. *Id*. An offender may appeal a Level I response, and the appeal is once again assigned to an appropriate employee or contract staff member for review. *See id*. Once the review is complete, the Superintendent of the facility issues a formal response to the offender. *See id*. This is known as Level II. *Id*.

An offender who is dissatisfied with the Level II response may appeal that decision to DOC headquarters. *See* Dkt. 22, ¶ 6; Dkt. 22-1 at 15-16. This is known as Level III. *Id*. At this level, the Resolution Program Manager assigns the complaint to a member of the DOC Headquarters staff for review. *See id*. Once the review is complete, a formal response is issued by the Deputy Secretary of the DOC or his/her designee. Dkt. 22, ¶ 6; Dkt. 22-1 at 15. This is the final level of review under the Offender Grievance/Resolution Program. *See id*.

**C. Analysis**

Defendants argue that Plaintiff's ADA/RA claim fails because he failed to exhaust his administrative remedies. Dkt. 18 at 10-11. Specifically, Defendants assert that Plaintiff filed his

complaint while housed in the Intensive Treatment Unit at the SOU, but he has filed neither an accommodation request nor a resolution request relating to library access or educational programming at that facility. *See id*. Plaintiff disputes Defendants' assertions, arguing that he made an accommodation request while confined at WSP, and that he fully exhausted his claim through the Offender Grievance/Resolution Process by pursuing a grievance to Level III. *See* Dkt. 24 at 11-12.

With respect to Plaintiff's purported accommodation request, according to Defendants' records Plaintiff has not utilized the DOC's accommodation request process to pursue access to educational programming during the course of his confinement in the SOU. *See* Dkt. 19, ¶ 12. Plaintiff does not dispute that he has not filed an accommodation request while housed at the SOU. He asserts, however, that while housed in the BAR Units at WSP, he notified his mental health counselor that he wanted to participate in post-secondary education, and he claims this constituted an ADA accommodation request. *See* Dkt. 24 at 6-7.

In support of this assertion, Plaintiff cites to a mental health treatment plan prepared by his mental health counselor at WSP in April 2021, which notes Plaintiff's need for increased educational opportunities and his willingness to "transfer to [a] less restrictive facility that offers educational opportunities." *See* Dkt. 24 at 6-7, 24. There is no evidence in the record that these entries in Plaintiff's mental health plan were made in response to an ADA accommodation request. And even assuming the Court were to infer that Plaintiff made an appropriate ADA accommodation request at WSP, there is no evidence that he pursued that request through the entirety of the ADA accommodation request process as would be necessary to satisfy the exhaustion requirement.

With respect to Plaintiff's use of the DOC resolution process, the DOC's official records

reflect that in late 2020, while Plaintiff was housed in the BAR Units at WSP, he filed a resolution request complaining about the lack of access to post-secondary education, a computer literacy lab, and TI-89 graphing calculators in the BAR units. *See* Dkt. 22, ¶ 11; Dkt. 22-1 at 30. Plaintiff pursued review of this resolution request through Level III of the DOC's Offender Grievance/Resolution Process and therefore exhausted the process with respect to his complaints regarding deficiencies in educational opportunities in the BAR Units. *See* Dkt. 22, ¶¶ 11-13; Dkt. 22-1 at 30-34.

However, the DOC's records also reflect that following Plaintiff's transfer to the SOU in November 2022, he submitted numerous resolution requests but none pertaining to access to educational programming, computer labs, or graphing calculators in the SOU. Dkt. 22, ¶ 15; Dkt. 22-1 at 36. Plaintiff asserts that his claim pertaining to access to higher education in the SOU has been exhausted because, though he started the resolution process while housed in the BAR Units, the same issue continued following his move to the SOU. *See* Dkt. 24 at 11-12. Plaintiff maintains that he was moved to the SOU specifically to remedy the problem of lack of access to educational opportunities, and it is therefore obvious that his current concern is merely a continuation of a pre-existing problem. *Id*. at 12.

As Defendants correctly note, the primary purpose of a grievance is to notify prison officials of a problem. *Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009). Plaintiff's grievance materials make clear that the grievance he submitted while at WSP pertained specifically to the BAR Units. *See* Dkt. 22-1 at 30-34. At no time did Plaintiff advise officials at the SOU of his concerns and there is no basis to conclude that SOU officials should have been aware of his concerns based on a resolution request filed at a different facility approximately two years before he even arrived at the SOU. The record makes clear that Plaintiff failed to exhaust

his claims pertaining to access to a library, a computer lab, and post-secondary education at the SOU.[4]

Finally, the Court addresses the suggestion made by Plaintiff in his response to Defendant's summary judgment motion that Defendants have improperly limited his claims by addressing them only in the context of conditions at the SOU. *See* Dkts. 10-12. In this regard, the Court observes that Plaintiff's complaint was not pled with a great deal of specificity. In the single count of his complaint, Plaintiff referred to deficiencies in RTUs generally and complained about specific deficiencies in the MCC-SOU library. *See* Dkt. 5 at 5-6. Plaintiff's requests for relief were also quite general. *See id*. at 7

Defendants, in their summary judgment motion, focus their exhaustion argument on Plaintiff's confinement at the SOU and his failure to exhaust administrative remedies available there, because that is where Plaintiff was housed when he filed this action. Plaintiff, in his response to Defendants' summary judgment motion, takes issue with Defendants' attempt to limit the scope of this action to his confinement in the Intensive Management Unit and he suggests that his claims are more expansive and pertain to deficiencies in the RTUs at both WSP (the BAR Units) and MCC (the SOU), asserting that the same problems exist at both facilities. *See* Dkt. 24 at 10-12.

---

[4] Plaintiff offers an assortment of other arguments in support of his assertion that he exhausted his remedies. Specifically, Plaintiff claims that he "wrote" to WSP Superintendent Holbrook and he references a kite he directed to Mr. Holbrook in September 2020. *See* Dkt. 24 at 12, 37. However, a kite is not a part of the DOC resolution process and, indeed, Plaintiff was advised in the response to his kite that he would receive an answer to his concerns regarding post-secondary education in the BAR units through the grievance process. *See id*. at 37. Plaintiff also cites to communications he had with Disability Rights Washington regarding education access in the RTUs and to complaints he submitted to the Corrections Ombuds regarding the issue. *See* Dkt. 24 at 12. However, such communications and complaints are not a part of the established DOC resolution process and therefore do not satisfy the exhaustion requirements set forth in § 1997e(a).

If Plaintiff's intent is to challenge a state-wide institutional issue, as he suggests in his response, it is incumbent upon him to grieve that issue. There is no evidence that Plaintiff has done so. The grievance Plaintiff pursued at WSP pertained specifically to the BAR Units and can in no way be construed as a generalized grievance pertaining to RTUs state-wide. As the record makes clear that Plaintiff failed to exhaust his administrative remedies, Defendants are entitled to summary judgment in this action.[5]

## IV. CONCLUSION

Based on the foregoing, this Court recommends that Defendants' motion for summary judgment (Dkt. 18) be granted and that Plaintiff's complaint (Dkt. 5) and this action be dismissed without prejudice. A proposed Order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk within **twenty-one (21) days** of the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect the right to appeal. Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **April 26, 2024**.

DATED this 3rd day of April, 2024.

S. KATE VAUGHAN
United States Magistrate Judge

[5] To the extent Plaintiff exhausted his claim pertaining to the BAR Units, the Court notes that Plaintiff is no longer housed at WSP, and he has no standing to pursue injunctive relief related to issues there. *See DeFunis v. Odegaard*, 416 U.S. 312, 316 (1974) (The has no authority to decide "questions that cannot affect the rights of litigants in the case before [it].") As noted above, Plaintiff seeks only injunctive relief in this action and, thus, any claim pertaining exclusively to WSP is properly dismissed for lack of jurisdiction.